IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Janice L. Massey, ) | C/A No. 0:11-2251-MGL-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Michael J. Astrue, ) | **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Janice L. Massey, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions[1] and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In July 2007, Massey applied for DIB and SSI, alleging disability beginning July 20, 2007. (Tr. 118-23.) Massey's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on December 11, 2009, at which Massey, who was represented by David Hood, Esquire, appeared and testified.

---

[1] The court notes that Massey's reply brief was untimely filed and should therefore not be considered. However, even if the court were to consider it, it would not change the court's recommendation in this matter.



The ALJ, after hearing testimony from a vocational expert, issued a decision on February 10, 2010 denying benefits and concluding that Massey was not disabled. (Tr. 18-27.)

Massey was born in 1964 and was forty-three years old at the time of her alleged disability onset date. (Tr. 121.) She has a high school education and past relevant work experience as a waitress. (Tr. 151, 157.) Massey alleged disability since July 20, 2007 due to asthma, chronic obstructive pulmonary disease, lung disease, and thyroid cancer. (Tr. 151.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since July 20, 2007, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease and asthma (20 CFR 404.1520(c) and 416.920(c)).

    \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

    \* \* \*

5. . . . [T]he claimant has the residual functional capacity to perform sedentary work[] as defined in 20 CFR 404.1567(a) and 416.967(a) with accommodation for a sit/stand option at will and with restriction from any exposure to extremes of temperature or humidity or respiratory irritants (such as fumes, odors, gases, etc.).

    \* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    \* \* \*

7. The claimant was born on [REDACTED], 1964 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

*PJG*

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 20, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 20-26.) On June 21, 2011, the Appeals Council denied Massey's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

PJG

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).

PJG

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Massey raises the following issues for this judicial review:

I. The ALJ failed to consider all of Massey's impairments in the assessment of her residual functional capacity.

II. The ALJ failed to properly evaluate the credibility of the Plaintiff.

(Pl.'s Br., ECF No. 21.)

PJG

## DISCUSSION

A.      **Massey's Impairments**

Massey argues that the ALJ failed to properly consider all of her impairments in performing his residual functional capacity ("RFC") analysis. Massey also disputes the ALJ's determination that several of Massey's impairments constituted "non-severe" impairments rather than "severe" impairments.

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant bears the burden at this step to show that she has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) 416.920(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

(1)     Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)     Capacities for seeing, hearing, and speaking;
(3)     Understanding, carrying out, and remembering simple instructions;
(4)     Use of judgment;
(5)     Responding appropriately to supervision, co-workers and usual work situations; and
(6)     Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work

experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

Additionally, a claimant's RFC "is the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.

The ALJ found that Massey's chronic obstructive pulmonary disease and asthma constituted severe impairments. The ALJ also considered the following impairments and found them to be non-severe: osteoarthritis of her left knee, right carpal tunnel syndrome, right shoulder injury, thyroid cancer, and depression/anxiety. Specifically, the ALJ found that although Massey received surgical treatment for her osteoarthritis of her left knee, right carpal tunnel syndrome, and right shoulder injury, the record did not demonstrate that any of them "imposed significant work-related limitations for any twelve-month period relevant to this decision." (Tr. 20.) Similarly, the ALJ found that although Massey underwent a partial thyroidectomy, Massey did not suffer any work-related functional limitations from her thyroid problem. Finally, the ALJ determined that Massey's mental impairment was non-severe because it did not cause more than mild limitations in the functional areas of activities of daily living; social functioning; and concentration, persistence, or pace and resulted in no episodes of decompensation for an extended period.

Massey argues that the ALJ erred in failing to find her osteoarthritis of her left knee, right carpal tunnel syndrome, right shoulder injury, and depression/anxiety to be severe impairments.

Massey argues that she "had significant shoulder surgery less than 6 months prior to the hearing, and it was reasonable to assume that she would continue to have significant restrictions related to this continuing indefinitely into the future." (Pl.'s Br. at 20, ECF No. 21 at 20.)  Further, Massey states that the record reveals that she complained of some problems during therapy on August 24, 2009 and testified at the hearing that her shoulder continued to bother her.  The court finds that these arguments do not render the ALJ's decision unsupported, especially in light of the fact that the ALJ discounted Massey's credibility on this issue based on a report in November 2009 that her shoulder "looked good" and she could return to full activities and a report indicating that Massey denied any functional imitations upon discharge from physical therapy in April 2009.[3]  (Tr. 24.)  Similarly, Massey argues that the ALJ should have found her knee impairment and carpal tunnel syndrome to be severe impairments based on her testimony that she could only stand or walk for short periods without resting, that she could not sit without moving or changing positions frequently, and that she had problems using her hands.  However, the ALJ discounted Massey's testimony on these issues based on a report in January 2009 that Massey was doing well with regard to her knee and that the record failed to confirm her allegations. (Tr. 24.)  Massey argues that the ALJ erred in failing to find her depression or anxiety a severe impairment, relying on medical records from 2006 through 2009, which include diagnoses of depression or anxiety; three reports of an anxious, apprehensive, and tense mood; an instance of crying during an office visit for no reason; and being tearful during another.  However, these records do not indicate that the ALJ's determination that this impairment

---

[3] The court observes that Massey has challenged the ALJ's conclusions regarding her credibility; however, for the reasons discussed below the court finds that Massey has failed to demonstrate that the ALJ's credibility analysis was unsupported by substantial evidence or controlled by an error of law.



did not cause more than mild limitations in the functional areas of activities of daily living; social functioning; and concentration, persistence, or pace and resulted in no episodes of decompensation for an extended period was unsupported or that this impairment would "significantly limit[s] [Massey's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) 416.920(c).

Even if the ALJ erred in failing to find any of these impairments were severe, the court observes that these impairments were specifically discussed by the ALJ in conducting Massey's residual functional capacity ("RFC") analysis. Further, Massey has failed to demonstrate that these impairments resulted in additional functional limitations than those found by the ALJ. Moreover, the court observes that the ALJ limited Massey to sedentary work with additional restrictions including a sit/stand option. Therefore, the court finds that to the extent the ALJ erred, such error was harmless. See Shinseki v. Sanders, 556 U.S. 396, 129 S. Ct. 1696, 1706 (2009) (stating that a party attacking an agency determination bears the burden of showing that an error was harmful); Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (internal quotation marks and citations omitted); Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases).

Similarly, although Massey argues that the ALJ erred in failing to acknowledge that Massey had been diagnosed with fibromyalgia, other than arguing that she had "problems resulting from this condition," Massey has not identified any additional credible limitations stemming from this



condition which were not included in Massey's RFC. With regard to Massey's allegation that consideration of the combined effect of Massey's osteoarthritis of her left knee, right carpal tunnel syndrome, right shoulder injury and related surgeries would have "precluded substantial work activity for at least a closed period of time greater than a year in duration," the court finds this argument to be unsupported. (Pl.'s Br. at 24, ECF No. 21 at 24.)

Finally, Massey alleges that the ALJ failed to consider Massey's limitations relating to her breathing problems, such as hoarseness, coughing, wheezing, and her need for frequent breathing treatments. (See Pl.'s Br. at 25-26, ECF No. 21 at 25-26.) However, contrary to Massey's allegation, it appears that the ALJ specifically considered the alleged limitations caused by Massey's respiratory ailments and did not find such limitations necessary. Massey's reliance on her testimony and selective medical records do not render the ALJ's decision unsupported. (Cf. Def.'s Br. at 13-14, ECF No. 22 at 13-14) (citing medical records demonstrating that Massey's breathing problems responded well to treatment).

Based on the foregoing, Massey has not demonstrated that the ALJ's consideration of Massey's impairments and formulation of her RFC were unsupported by substantial evidence or controlled by an error of law.[4]

**B.     Massey's Credibility**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter

---

[4] The court notes that Massey did not offer any medical opinions supporting her functional limitations.

only the second step is at issue,[5] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i) Your daily activities;
(ii) The location, duration, frequency, and intensity of your pain or other symptoms;
(iii) Precipitating and aggravating factors;

---

[5] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

(iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)  Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

During the hearing, Massey testified that she previously smoked two packages of cigarettes per day, but that she is trying to stop smoking and at that time was smoking one package of cigarettes per day. Massey stated that due to surgery on her right hand for carpal tunnel syndrome and on her right shoulder, she is limited to lifting twenty pounds occasionally. She also testified that she had surgery on her right foot and her knee and that she has fibromyalgia, making it difficult for her to manage stairs. Massey stated that she left her last job as a waitress to surgically treat her thyroid cancer. Massey testified that she currently experiences a lot of swelling in her feet, legs, and arms and that she takes fluid pills daily. Massey stated that she required two hours to prepare herself to go anywhere, indicating that her difficulty with breathing required her to take frequent breaks. She testified that she would perform an activity, such as washing dishes, for twenty or thirty minutes and then rest for two or three hours. Massey indicated that she had "a lot of bad days," where she would nap and take breathing treatments, which she takes every two to three hours for fifteen to twenty minutes. Massey stated that she could stand for ten to fifteen minutes and sit for fifteen to twenty minutes. She testified that she did not sleep well, and when she experienced shortness of breath at night would take a breathing treatment. After taking her daughter to school in the mornings, Massey stated that she usually rests for about three hours and then waits to pick her daughter up from school.



Massey indicated that she takes medication for depression or anxiety and that some days she just sits and cries. She testified that her medications cause side effects, including nervousness, nausea, and headaches. (Tr. 35-43.)

In this case, the ALJ found that Massey's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[6] (Tr. 23.) In reaching this conclusion, the ALJ found that Massey's credibility was weakened based on her failure to stop smoking in contravention of advice from her treating physicians, noting that her respiratory problems improved significantly when she was not smoking, and that the medical evidence did not support her symptoms.

Massey first argues that the ALJ erred in discounting her credibility based on her failure to stop smoking. Specifically, Massey alleges that the record demonstrates that Massey consistently tried to quit smoking, trying multiple methods and medications, and that she successfully stopped on two occasions. Massey argues that the ALJ should have found good cause for her non-compliance based on her efforts and the addictive nature of cigarette smoking. Contrary to Massey's argument, the ALJ properly considered Massey's failure to stop smoking in assessing her credibility. See 20 C.F.R. §§ 404.1530, 416.930 (discussing consideration of a claimant's failure to follow prescribed treatment and providing examples of good reasons to fail to follow such treatment);

---

[6] As stated above, the ALJ found that Massey retained the residual functional capacity to "perform sedentary work[] as defined in 20 CFR 404.1567(a) and 416.967(a) with accommodation for a sit/stand option at will and with restriction from any exposure to extremes of temperature or humidity or respiratory irritants (such as fumes, odors, gases, etc.)." (Tr. 22.)



Thornsberry v. Astrue, C/A No. 4:08-4075-HMH-TER, 2010 WL 146483, at *3 (D.S.C. Jan. 12, 2010) (finding that an ALJ properly considered a claimant's failure to stop smoking against a physician's advice in assessing the claimant's credibility).

Massey also argues that the ALJ erred by citing only selective medical evidence that supported his decision without referencing evidence that supported Massey's allegations. In this case, the ALJ found that the record did not support Massey's allegations of daily medication side effects based on reports that she was not suffering any gastrointestinal complaints or headaches. (Tr. 23) (citing Tr. 489-91,432). Further, Massey reported in May 2008 that she was not suffering from fatigue and had no complaints since she stopped smoking. (Id.) (citing Tr. 439-42). The ALJ found that the record demonstrated that Massey had knee surgery in November 2008, right hand surgery in February 2009, and shoulder surgery in June 2009, but that the record did not "contain information to confirm the claimant's allegations as to any residuals following the operations." (Tr. 24.) The ALJ observed that the record indicated that in January 2009 Massey was doing well with regard to her knee, in November 2009 her shoulder "looked good" and she could return to full activities, and in April 2009 Massey denied any functional limitations upon discharge from physical therapy for her shoulder where she met all goals. The ALJ further found that the record did not indicate that Massey's alleged depression and anxiety/nervousness "imposed significant work-related functional limitations for any twelve-month period relevant to this decision." (Tr. 24.) The ALJ noted that Dr. Desmond J. Young reported on numerous occasions that Massey was not experiencing any difficulties with her concentration, mood, affect, or general thought processes and that the record did not reveal that Massey had sought treatment from a mental health professional. The ALJ acknowledged that Massey had made "sporadic" complaints regarding swelling to her legs and feet;

however, he observed that Massey has "been routinely described as not having any edema upon physical examination," (Tr. 24) (citing Tr. 432), and that "a bilateral venous duplex study performed in February 2008 proved to be negative for deep venous thrombosis or reflux in either leg." (Id.) (citing Tr. 425-26). Finally, the ALJ stated with regard to Massey's need for cardiac treatment or follow-up that Massey had been seen by a cardiologist "but echocardiograms performed in April 2008 and May 2008 were normal except for mild mitral tricuspid regurgitation" and that the record did not indicate that Massey had been diagnosed with a cardiac condition. (Id.)

The court has reviewed all of the medical records cited by Massey in her brief in support of her credibility. Although some of these selective records may support Massey's credibility, they do not render the ALJ's decision unsupported. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). Accordingly, upon review of the record, the ALJ's decision, and the parties' arguments, the court finds that Massey has failed to demonstrate that the ALJ's credibility analysis was not supported by substantial evidence or was controlled by an error of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with

her complaints); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling" and indicating that a diagnosis is insufficient to establish disability as "[t]here must be a showing of a related functional loss").

## RECOMMENDATION

For the foregoing reasons, the court finds that Massey has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 24, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).